[Cite as *In re K.H.*, 2016-Ohio-1330.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: K.H.
     J.S.
     K.S.
     J.S.

C.A. No.      27952

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 13-03-171
                 DC 13-03-172

DECISION AND JOURNAL ENTRY

Dated: March 30, 2016

HENSAL, Judge.

{¶1} Appellant, Wanda S. ("Mother"), appeals from judgments of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her youngest two children and placed her oldest two children in the legal custody of the oldest son's paternal aunt. This Court affirms.

I.

{¶2} Mother is the biological mother of four minor children: K.H., born July 24, 2002; J.S., born May 3, 2006; K.S., born May 19, 2010; and J.S., born July 19, 2012. The children's fathers did not participate in the trial court proceedings and are not parties to this appeal.

{¶3} On March 4, 2013, the Barberton Police Department removed the children from the custody of Mother pursuant to Juv.R. 6 because K.S., then two years old, was found alone

outside her home.  After a neighbor directed the police to Mother's home, they found her asleep on her bed with the then-infant J.S.

{¶4}    All four children were later adjudicated neglected and dependent children and K.S. was also adjudicated an abused child.  The trial court placed the children in the temporary custody of CSB and adopted the case plan on May 31, 2013.  K.H. and the older J.S. (Mother's sons) were placed with a paternal aunt of K.H.  Because the aunt also cared for her own minor children, she did not feel that she could also care for the Mother's youngest two children (her daughters).  Consequently, Mother's daughters were placed in a foster home.  The children remained in the same temporary homes throughout this case.

{¶5}    The initial case plan required Mother to complete a parenting education program, obtain a substance abuse assessment and follow any treatment recommendations, and acquire and maintain safe and stable housing.  The case plan was later amended to require Mother to obtain a mental health assessment and follow any treatment recommendations because she had been expressing paranoid and delusional thoughts about people trying to harm her.

{¶6}    Mother obtained a mental health evaluation and was diagnosed with bipolar disorder with mood-incongruent psychotic features.  Treatment recommendations included that she engage in regular counseling and obtain a psychiatric assessment to determine whether medication would stabilize her delusional thoughts.  Although Mother engaged in some counseling and started taking psychiatric medication, which she admitted helped to control her hallucinations, she stopped taking the medication and did not consistently engage in counseling.  During April 2015, Mother stopped counseling altogether.  She also lacked stable income and housing.

{¶7}   By that time, Mother's four children had been living outside her custody for almost two years, but she had made little progress on the reunification goals of the case plan. CSB initially moved for permanent custody of all four children, but later withdrew the motion as to the Mother's sons.   CSB instead moved to have the sons placed in the legal custody of the paternal aunt.   Mother alternatively moved to have all four children returned to her custody.

{¶8}   The matter proceeded to a hearing on the dispositional motions.   Following the hearing, the trial court placed Mother's sons in the legal custody of the paternal aunt and placed her daughters in the permanent custody of CSB.   Mother appeals and raises two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT'S DECISION TO TERMINATE PARENTAL RIGHTS WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶9}   Mother's first assignment of error is that the trial court's judgment is against the manifest weight of the evidence.   The trial court permanently removed her four children from her custody by placing her daughters in the permanent custody of CSB and her sons in the legal custody of the aunt.

{¶10} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under Revised Code Section 2151.414(E); and (2) that

the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Section 2151.414(D). *See* former R.C. 2151.414(B)(1)[1] and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶11} The trial court found that the first prong of the permanent custody test had been satisfied because the daughters had been in the temporary custody of CSB for more than 12 of the prior 22 months. Mother does not dispute that finding but instead argues that the evidence failed to support the trial court's finding that permanent custody was in the best interest of her daughters.

{¶12} Mother also argues that the evidence failed to support the court's decision to place her sons in the legal custody of the aunt. Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child. *See In re D.R.*, 153 Ohio App.3d 156, 2003-Ohio-2852, ¶ 17 (9th Dist.). "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11.

{¶13} "[T]his Court has held that the best interest test set forth in R.C. 2151.414(D), although it relates to permanent custody, 'provide[s] guidance' in legal custody determinations." *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, quoting *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Consequently, the trial court was required to consider the same best interest factors in its disposition of each of Mother's four children.

---

[1]   Section 2151.414(B)(1) was amended effective September 17, 2014.

**{¶14}** When determining the children's best interests under Section 2151.414(D), the juvenile court must consider all "relevant" factors, including the interaction and interrelationships of the children, the children's wishes, the custodial history of the children, their need for permanence in their lives, and any factors under Revised Code Sections 2151.414(E)(7) through (11), if applicable. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. Mother asserts that the trial court erred by failing to address the best interest factor set forth in Section 2151.414(D)(1)(e), "[w]hether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child[ren]." Because no evidence was presented to the trial court that any of the factors set forth in Sections 2151.414(E)(7) through (11) applied in this case, however, the trial court was not required to discuss or make findings under Revised Code Section 2151.414(D)(1)(e). *See In re A.M.L.B.,* 9th Dist. Wayne App. No. 08CA0028, 2008–Ohio–4944, ¶ 8.

**{¶15}** As it was required to do, the trial court reviewed the best interest factors set forth in Section 2151.414(D) that were applicable to the facts of this case. First, it looked at the interaction and interrelationships of Mother and her children. Because Mother never complied with the mental health component of the case plan, she had no unsupervised contact with her children during this case. Witnesses testified that Mother usually behaved appropriately during the visits with her children, but the guardian ad litem observed that the oldest son often assumed the role of caretaker for his younger sisters and the male J.S. would sometimes go off and play alone. For more than two years while this case was pending, Mother saw her children only once a week. CSB offered Mother the opportunity to see them twice a week, but Mother declined an additional day to visit and instead chose to add an hour to the day that she was already visiting.

She testified at the hearing that there were "a lot of things that I was having to do" and that she preferred to have just one day devoted to her children.

{¶16} Mother's children had adjusted to the homes where they had lived for more than two years. The sons had lived with the aunt throughout that period and the daughters had lived together in the same foster home. The children had become attached to their respective caregivers, who were providing them with safe, stable, and loving homes. The foster mother was interested in adopting the daughters and the aunt was prepared to provide the sons with a permanent home through a legal custody placement.

{¶17} The sons had expressed their desire to return to Mother's home but understood that living with her may not be possible. They were happy in the aunt's home and were prepared to stay there if Mother was not able to care for them. The guardian ad litem believed that the boys had adjusted well to the aunt's home. She emphasized that their behavior and school performance had improved and that they always appeared to be well cared for. The guardian ad litem recommended that the sons be placed in the legal custody of the aunt.

{¶18} Given the young ages of Mother's daughters, the guardian ad litem spoke on their behalf. She opined that they were doing well in the foster home and noted that the foster mother was working with K.S. to address her delayed speech and potential behavior problems. The guardian recommended that the daughters be placed in the permanent custody of CSB so that they could be placed for adoption by the foster family.

{¶19} By the time of the hearing, the four children had spent more than two years living outside Mother's custody. Her young daughters had lived outside her custody for most of their lives. "This Court has repeatedly stressed, however, that 'the time period in and of itself cannot be held against the parent without considering the reasons for it and the implications that it had

on this child.'" *In re I.A.*, 9th Dist. Summit No. 26642, 2013-Ohio-360, ¶ 20, quoting *In re C.M.,* 9th Dist. Summit No. 21372, 2003-Ohio-5040, ¶ 16 and *In re Smith,* 9th Dist. Summit No. 20711, 2002 WL 5178, *5 (Jan. 2, 2002).

{¶20} During those two years, Mother had done little to comply with the reunification goals of the case plan. Mother argues on appeal that the only goals that she had yet to address were housing and employment, but the record reveals otherwise. The trial court focused its best interest decision on Mother's failure to address her significant mental health problems. The therapist who performed Mother's mental health assessment in June 2014 testified that Mother was paranoid and delusional when she first met her. After Mother began counseling and medication management, the therapist observed that her delusions subsided and her moods appeared to stabilize.

{¶21} Mother's therapist testified that Mother suffered from Bipolar I Disorder, which is more severe than Bipolar II Disorder. She explained that the mood swings and impaired thinking associated Bipolar I Disorder cannot typically be regulated without psychiatric medication. She further testified that, in her opinion, because Mother's mental illness affects her decision making and parenting ability, Mother would need ongoing psychiatric medication management to provide appropriate care for her children.

{¶22} Mother herself admitted that, prior to taking psychiatric medication, she suffered from hallucinations. Psychiatric medication had stabilized her mental health and helped her sleep, but she stopped taking it because she did not like the side effects. Although Mother's therapist had encouraged her to discuss the side effects with her psychiatrist and ask about alternate medications, Mother admitted that she did not request an adjustment to her medications. Instead, she stopped taking the medication and stopped seeing the psychiatrist altogether.

Mother also failed to consistently attend counseling sessions. Throughout this case, Mother missed approximately half of her scheduled counseling sessions and, by the time of the hearing, Mother had not seen her therapist for three months.

{¶23} During that same time period, however, Mother's children had become well-adjusted in safe, stable, and loving homes with temporary caregivers who were prepared to provide them with permanent homes. Given that Mother was not able to provide her children with a stable home and CSB had been unable to find any relatives other than the aunt who were willing and able to do so, the trial court reasonably concluded that a legally secure permanent placement would only be achieved by placing the sons in the legal custody of the aunt and the daughters in the permanent custody of CSB so they could be adopted.

{¶24} Therefore, the trial court had substantial evidence before it to support its conclusion that permanent custody was in the best interest of Mother's daughters and legal custody to the aunt was in the best interests of her sons. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY NOT GRANTING APPELLANT-MOTHER'S MOTION FOR LEGAL CUSTODY WHERE [CSB] FAILED TO USE REASONABLE EFFORTS TO REUNITE [MOTHER] AND HER MINOR CHILDREN.

{¶25} Mother's second assignment of error is that the trial court erred in permanently removing her four children from her custody because CSB failed to make reasonable efforts to return them to her custody. The record reveals that CSB arranged for Mother to obtain services from numerous providers, including more than one mental health provider, but that Mother failed to consistently engage in treatment.

{¶26} Mother's sole support for this argument is her own testimony that she and her caseworker had a poor relationship and that she requested a new caseworker, but that CSB refused to change her caseworker. Mother's testimony is not supported by anything else in the record, however. No other witness testified about a poor relationship between Mother and the caseworker.

{¶27} The written filings in this case reflect that the same caseworker was assigned to Mother's case for more than two years. Mother was represented by counsel throughout this case but she did not move the trial court to remove that caseworker and/or assign her a new one. She also filed no objections to any of the amended case plans, which continued to identify the same caseworker throughout this case. Mother also had the opportunity to participate in the semi-annual review hearings about the case plan, but there is nothing in the written review reports to suggest that she ever raised this issue.

{¶28} Moreover, in numerous decisions throughout this case, the magistrate found that CSB had made reasonable reunification efforts with Mother, but Mother filed no objections to any of those findings. Because Mother failed to timely raise this issue in the trial court and does not argue plain error on appeal, she has failed to preserve the issue for appellate review. Juv.R. 40(D)(3)(b)(iv). Mother's second assignment of error is overruled.

III.

{¶29} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

MADELINE LEPIDI-CARINO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

LINDA BENNETT, Guardian ad Litem.