[Cite as *In re E.W.*, 2017-Ohio-5623.]

STATE OF OHIO       )              IN THE COURT OF APPEALS
                              )ss:         NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA    )

IN RE: E.W.                             C.A. No.      16CA0052-M

 

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     2014 11 NE 0048

DECISION AND JOURNAL ENTRY

Dated: June 30, 2017

---

TEODOSIO, Judge.

{¶1} Appellant, Sara N. ("Mother"), appeals from a judgment of the Medina County Court of Common Pleas, Juvenile Division, that placed her minor child in the legal custody of her paternal grandparents ("Grandparents"). This Court affirms.

I.

{¶2} Mother is the biological mother of E.W., born October 29, 2013. Mother had another child who was a party to the trial court proceedings and she became pregnant with her third child, but E.W. is the only child at issue in this appeal. The father of E.W. supported the motion for legal custody to his parents and did not appeal from the trial court's judgment.

{¶3} E.W. has been involved with children services agencies in different counties since shortly after her birth because of her parents' mental health issues and lack of stable housing. This case began when E.W. was 13 months old. Medina County Job and Family Services ("MCJFS") filed a complaint to allege that E.W. was a dependent child because Mother was

involved in a voluntary safety plan but was not following through with services for herself or E.W. At that time, Mother was homeless and E.W. was residing with Grandparents. The parents later agreed to an adjudication of dependency and that E.W. would be placed in the temporary custody of MCJFS. E.W. continued to reside in the home of Grandparents throughout this case.

{¶4} Mother had been diagnosed with bipolar disorder with psychosis, dependent personality disorder, and borderline personality disorder, and had a long history of involving herself in unhealthy relationships with people who abused drugs and physically or sexually abused Mother or others. The case plan goals for Mother focused primarily on her engaging in counseling and education to develop insight into her poor lifestyle choices.

{¶5} Mother engaged in counseling and medication management during this case but, after she discovered that she was pregnant with her third child, she discontinued her psychiatric medications. Despite Mother's suggestions to the contrary, neither MCJFS nor the trial court expected Mother to continue taking psychiatric medications while she was pregnant, but she was required to continue with counseling and other services. Although Mother engaged in regular counseling, she continued to associate with inappropriate people. For two prolonged periods during this case, Mother lived with the maternal grandmother who had her own history with children services agencies because of long-term domestic violence and drug use. Moreover, Mother continued to become romantically involved with abusive men, many of whom were convicted sex offenders.

{¶6} MCJFS eventually moved to have E.W. placed in the legal custody of Grandparents. Mother alternatively requested that temporary custody be extended for six months to allow her more time to work on the case plan. At the hearing, the evidence was not disputed that Mother lacked a support system of appropriate friends and family members. Instead, she

involved herself with drug users and sex offenders. Mother did not dispute that four of her past five boyfriends were men who had been convicted of sex offenses against young girls, yet she did not believe that any of those men posed a threat to her young daughter. Mother resisted revealing the identity of her most recent boyfriend, who had been convicted of a sex offense against a child under the age of 12. At the hearing, Mother insisted that all but one of her boyfriends had been wrongfully convicted and that they should not be kept away from E.W.

{¶7}    The trial court found that it was in the best interest of E.W. to be placed in the legal custody of Grandparents and entered judgment accordingly. Mother appeals and raises two assignments of error.

II.

**ASSIGNMENT OF ERROR ONE**

THE TRIAL COURT ERRED WHEN IT ADOPTED THE AMENDED CASE PLAN AT THE AUGUST 18, 2015, REVIEW HEARING WITHOUT FOLLOWING THE MANDATORY PROCEDURES OUTLINED BY R.C. 2151.412.

{¶8}    Mother's first assignment of error is that the trial court erred in amending the case plan at a review hearing held several months before the legal custody hearing because she was not given prior written notice. *See* R.C. 2151.412(F)(2). The amendments reflected recommendations of a psychologist who evaluated Mother's parenting skills. MCJFS does not dispute that it failed to comply with the written notice requirement of R.C. 2151.412(F)(2), but asserts that Mother did not object to the amended case plan at the time it was introduced, discussed, and adopted at the review hearing. In this case, however, not only did Mother fail to object to the lack of proper notice, but she agreed to the adoption of the amended case plan.

{¶9}    At the review hearing on August 18, 2015, the psychologist who evaluated Mother testified, her recommended amendments to the case plan amendments were thoroughly

discussed, and the caseworker testified that Mother had agreed to comply with the additional requirements of the amended case plan. In fact, Mother's trial counsel affirmatively stated at the hearing that Mother had no objection to the amended case plan. Counsel cross-examined the caseworker only to clarify the requirements of one of the amendments. Because Mother agreed to the trial court's adoption of the case plan amendments, her first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED WHEN IT GRANTED LEGAL CUSTODY OF E.W. TO PATERNAL GRANDPARENTS RATHER THAN GRANTING A SIX-MONTH EXTENSION FOR MOTHER TO CONTINUE TO WORK THE CASE PLAN.

{¶10} Mother's second assignment of error is that the trial court erred in placing E.W. in the legal custody of Grandparents. "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *See In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision [regarding legal custody] on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11.

{¶11} Mother asserts that the trial court should have instead extended temporary custody for another six months. The trial court was required to conduct a best interest analysis to determine whether to place the child in the permanent custody of CSB or to extend temporary custody. Additionally, the trial court would have had authority to extend temporary custody only if it also found that Mother had made "significant progress" on the case plan and that there was reasonable cause to believe that the child would be reunified with her or otherwise permanently

placed during the extension period. R.C. 2151.415(D)(1). As detailed above, Mother had not made significant progress on the reunification goals of the case plan because she had gained no insight into her poor relationship choices and the threat that inappropriate adults posed to her child.

{¶12} Moreover, the evidence pertaining to the best interest of the child fully supported the trial court's decision. "[T]his Court has held that the best interest test set forth in R.C. 2151.414(D), although it relates to permanent custody, 'provide[s] guidance' in legal custody determinations." *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, quoting *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. When determining the child's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the child, her wishes, her custodial history, and her need for permanence in her life. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶13} Mother's interaction with E.W. during this case was limited to two hours per week of supervised visitation. Several witnesses observed that, when Mother visited E.W., they had to repeatedly prompt her to interact with the child or provide assistance in supervising E.W. Those witnesses observed little improvement in Mother's interaction with E.W. throughout this case.

{¶14} By the conclusion of the hearing, Mother had not visited E.W. for three months because her home was infested with bedbugs and Mother had been unable to resolve the problem. Although MCJFS did not fault Mother for the bedbug infestation, it did question her about why she had made no attempts to call E.W. or inquire about her well-being. Mother

explained that she had not called because she had been too busy trying to comply with the other requirements of the case plan.

{¶15} E.W. had maintained consistent, positive interaction with Grandparents, however. Grandparents had cared for E.W. on a temporary basis since shortly after her birth because Mother would often leave her with them for extended periods of time. E.W. was happy and secure in Grandparents' home and had become closely bonded to the entire family. The evidence was not disputed that Grandparents were willing and able to provide E.W. with a suitable permanent home.

{¶16} Because E.W. was only two years old at the time of the hearing, the guardian ad litem spoke on her behalf. He observed that E.W. was well adjusted to Grandparents' home and opined that it was in her best interest to be placed in their legal custody. He did not believe that Mother could provide E.W. with an appropriate home because she had made little progress in developing insight into her poor relationship choices. Despite many months of counseling, Mother still did not recognize that men who had been convicted of sex offenses against young girls pose a threat to her young daughter.

{¶17} By the end of the hearing, E.W. had been living outside Mother's custody and with Grandparents for almost one and one-half years. She was in need of a legally secure permanent placement and Mother with not able to provide her with a safe and stable home at that time or in the foreseeable future. Consequently, the trial court reasonably concluded that legal custody to Grandparents was in the best interest of E.W. Mother's second assignment of error is overruled.

## III.

**{¶18}** Mother's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
CARR, J.
CONCUR.

APPEARANCES:

DANA H. GARDNER, Attorney at Law, for Appellant.

JENNIFER A. MOORE, Attorney at Law, for Appellee.