**[Cite as *In re K.G.*, 2020-Ohio-4117.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: K.G.

C.A. No.      29668

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.      DN 18-05-0483

DECISION AND JOURNAL ENTRY

Dated: August 19, 2020

SCHAFER, Judge.

{¶1} Appellant A.D. ("Grandmother") appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that denied her motion for legal custody of her grandchild K.G. and placed the child in the legal custody of appellee R.G. ("Grandfather"). This Court affirms.

I.

{¶2} Mother and Father are the biological parents of K.G. (d.o.b. 3/12/16). Grandmother and Grandfather are the paternal grandparents of the child. Grandmother and Grandfather were married and divorced many years ago, and each has remarried. The grandparents, along with their spouses, have homes in California, where they reside approximately 30 minutes away from each other.

{¶3} K.G. was born prematurely and at the parents' home, as Mother did not realize that she was pregnant. Immediately after his birth, the infant suffered two rib fractures due to

resuscitative efforts by paramedics.  When the child was mature enough to be released from the hospital, he went home with his parents.

{¶4}  When Mother later took the child for a well-baby check, the doctor referred him for additional care based on the child's weight loss.  At that point, medical providers determined that the child had suffered multiple additional fractures to his ribs, clavicle, and femur.  The injuries were diagnosed as nonaccidental trauma, and the hospital made a referral to Summit County Children Services Board ("CSB" or "the agency").

{¶5}  Based on the child's injuries, as well as other concerns, CSB filed a complaint alleging that K.G. was an abused, neglected, and dependent child.  Mother and Father later waived their rights to an adjudicatory hearing and stipulated that K.G. was dependent.  CSB withdrew its allegations of abuse and neglect.  By further agreement of the parties, the child was placed in the temporary custody of the agency.  The juvenile court adopted the agency's proposed case plan as an order of the court.  The goal at that time was reunification of the child with his parents.

{¶6}  Immediately thereafter, CSB moved to modify the child's disposition to an order of temporary custody to non-relative kinship caregivers with protective supervision by the agency. The kinship caregivers resided in Summit County, Ohio.  Mother and Father agreed to that change in disposition.  CSB then initiated Interstate Compact for the Placement of Children ("ICPC") assessments for both Grandmother and Grandfather in California.

{¶7}  Ten months into the case, CSB moved for a first six-month extension of temporary custody to the kinship caregivers.  Although Mother and Father were noncompliant with their case plan objectives, the ICPC assessments for both Grandmother and Grandfather were expected to be completed soon.  In the meantime, both grandparents were granted leave to intervene as parties in the case.  Grandmother and Grandfather each filed a motion for legal custody of the child.  At the

time of the sunset hearing, Grandfather had been approved for placement, while Grandmother's assessment remained pending. The juvenile court ordered a six-month extension of temporary custody to the kinship caregivers with protective supervision by CSB. In addition, the court granted Grandfather's motion for extended visitation with the child.

{¶8} CSB filed a notice that the agency and Grandfather agreed that K.G. would spend the entire month of July 2019, with Grandfather in California. During that time, Grandfather was required to allow Grandmother visitation with the child without restrictions as to frequency, duration, and location, except that Grandmother could not have overnight visitations during that time. After Grandmother's ICPC assessment was approved in August 2019, she too was granted an extended visitation with the child in California, spanning three weeks in September and October 2019. Grandmother was required to allow Grandfather to visit with the child during that time. During both periods of extended visitation in California, each grandparent was required to facilitate contact between the child and his parents.

{¶9} After Grandfather's extended visitation, but before Grandmother's, CSB filed a motion to modify the child's disposition from temporary custody to kinship caregivers to legal custody to a relative, specifically Grandfather. Grandmother and Grandfather each maintained their respective motions for legal custody. Each grandparent submitted a statement of understanding for legal custody.

{¶10} At the final dispositional hearing, CSB orally withdrew its motion for legal custody to Grandfather. Instead, the assistant prosecutor asserted that the agency was not opposed to an award of legal custody to either grandparent, as each had been approved via ICPC assessment and their respective extended visitations went well. The guardian ad litem also remained neutral and recommended an award of legal custody to either grandparent, with a standard order of visitation

for the other. She further recommended that Mother and Father have a minimum of two hours, twice a week, of supervised phone, video, or in-person visitation with the child.

{¶11} After a hearing, the magistrate recommended granting Grandfather's motion for legal custody, giving Grandmother visitation two weekends per month, and allowing limited supervised visitation for Mother and Father. The juvenile court adopted the magistrate's decision the same day and ordered the case closed. Both Mother and Grandmother filed timely objections.[1] Grandfather moved to lift the automatic stay imposed based on the pending objections and for placement of K.G. with him in the interim in the interest of stability and permanency for the child, given that both viable legal custodians resided in California. The juvenile court initially denied the motion to lift the stay, but later granted it and ordered K.G. to be placed in California where he would spend alternating two-week periods with Grandfather and Grandmother pending the resolution of the objections and any appeals.

{¶12} The juvenile court subsequently overruled Mother's and Grandmother's objections. It awarded legal custody to Grandfather, as well as visitation for Grandmother, Mother, and Father. Grandmother filed a timely appeal in which she raises three assignments of error for review. This Court consolidates some assignments of error to facilitate review.

II.

ASSIGNMENT OF ERROR I

The trial court abused its discretion in not allowing [Grandmother] to call rebuttal witnesses following [Grandfather's] testimony.

---

[1] CSB also filed objections regarding the closing of the case. The agency argued that it was statutorily required to provide ongoing supervision for up to six months pending the receiving state's agreement to terminate the sending state's jurisdiction.

{¶13} Grandmother argues that the juvenile court erred by refusing to allow her to recall herself as a rebuttal witness after Grandfather's testimony. This Court disagrees.

{¶14} This Court recognizes:

"Rebutting evidence is that given to explain, refute, or disprove new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence." *State v. McNeill*, 83 Ohio St.3d 438, 446 (1998). "A party has an unconditional right to present rebuttal testimony on matters which are first addressed in an opponent's case-in-chief and [is not testimony that should have been presented] in the rebutting party's case-in-chief." *Phung v. Waste Mgmt. Inc.*, 71 Ohio St.3d 408, 410 (1994). The trial court has discretion to determine which proper rebuttal evidence may be admitted. *State v. Carrasquillo*, 9th Dist. Lorain No. 09CA009639, 2010-Ohio-5063, ¶ 16.

*Estate of Hall v. Akron Gen. Med. Ctr.*, 9th Dist. Summit No. 24066, 2011-Ohio-60, ¶ 4. "To reverse on the basis of an abuse of discretion, this Court must conclude that the trial court was unreasonable, arbitrary, or unconscionable in its ruling." *In re L.R.*, 9th Dist. Lorain Nos. 18CA011378 and 18CA011385, 2019-Ohio-1152, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶15} On appeal, Grandmother argues that the juvenile court abused its discretion by refusing to allow her to rebut Grandfather's testimony that Grandmother enabled Father's substance abuse, that Grandmother historically failed to comply with the grandparents' shared parenting plan when Father was a child, and that Father had expressed the desire that Grandfather have legal custody of the child. During the legal custody hearing, however, Grandmother requested the opportunity to rebut Grandfather's testimony based merely on a "bunch of accusations that came out * * *." In an attempt to clarify the new issues she wished to rebut, Grandmother's attorney merely stated that "[t]here were just a few things that were dangling out there that I'm not terribly comfortable just kind of leaving as they sat." Grandmother failed to identify with any specificity Grandfather's testimony she planned to rebut. Accordingly, the

juvenile court could not determine whether it was proper to permit Grandmother to recall herself as a rebuttal witness. Moreover, because Grandmother failed to proffer her rebuttal testimony, this Court is likewise unable to determine whether the juvenile court's refusal to allow Grandmother to present rebuttal evidence was unreasonable. *See Minson v. Cook*, 9th Dist. Summit No. 23972, 2008-Ohio-5231, ¶ 10. Grandmother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

The trial court's [judgment] was against the manifest weight of [the] evidence.

## ASSIGNMENT OF ERROR III

The trial court's [judgment] was not in the best interest of the minor child.

{¶16} Grandmother argues that the juvenile court's judgment was against the manifest weight of the evidence as it was contrary to the best interest of the child. This Court disagrees.

> On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence. Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest. Thus, our standard of review is whether a legal custody decision is against the manifest weight of the evidence.

(Internal citations and quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7.

{¶17} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*,

132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶18} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. In that regard, the juvenile court is guided by the best interest factors enunciated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 9th Dist. Summit Nos. 26976, 26977, 2014-Ohio-2748, ¶ 16. In addition, the juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850, 15CA010860, 2017-Ohio-1, ¶ 17. While some factors overlap with those above, others include the child's adjustment to his or her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio. R.C. 3109.04(F)(1).

{¶19} Initially in the proceedings below, CSB supported an award of legal custody of the child to Grandfather. The agency withdrew its motion for legal custody to Grandfather at the start of the hearing, citing the "need to just stay neutral[,]" given the ICPC approval of both grandparents' homes. The guardian ad litem also declined to recommend one of the grandparents over the other. Although she reported that joint custody of the child by Grandmother and Grandfather would be ideal, the guardian ad litem acknowledged that neither grandparent was willing to enter into such an agreement, given their prior difficulties managing shared parenting of Father as a child. Therefore, the guardian ad litem opined that legal custody of K.G. to either would be in the child's best interest. On appeal, CSB maintains its neutrality after filing a notice of nonparticipation in the briefing to this Court. The guardian ad litem has also not filed an appellate brief.

{¶20} There is no dispute that neither Mother nor Father is a suitable custodian for the child. The parents failed to comply with their case plan objectives to address significant concerns regarding substance abuse, parenting, and the ability to meet the child's basic needs. Accordingly, the only consideration before the juvenile court was whether the best interest of the child would be met by an award of legal custody to either Grandmother or Grandfather.

{¶21} Both the caseworker and the guardian ad litem testified that the significant considerations for the placement of every child include the safety of the home environment, whether the caregiver can meet the child's basic needs, and the bond between the child and caregiver. A safe and stable home, where a child feels secure and is nurtured meets the best interest of the child.

{¶22} In this case, both grandparents' homes were thoroughly vetted for suitability. All household members were subjected to background checks. The ICPC assessments concluded that

Grandmother's and Grandfather's homes were equally and unreservedly appropriate for K.G. Father has half-siblings living in each home, so the child has exposure to extended family wherever he resides. Although Grandfather's home is much larger than Grandmother's, the child would have his own bedroom in each.

{¶23} Both grandparents live in safe neighborhoods, with access to nearby parks and playgrounds. The child would attend daycare for purposes of socialization regardless of who was his legal custodian. Grandmother and Grandfather each had developed a plan for the child's later education in school.

{¶24} The grandparents and their spouses all work, but one adult in each household has a flexible schedule which would facilitate accommodating the child's schedule and needs. Grandmother and Grandfather each recognized the spouse of the other as another grandparent to the child.

{¶25} There were no concerns during the child's extended visits in California with either grandparent. The child acclimated to each home environment, where all his basic needs were met. Both grandparents ensured that the child engaged in stimulating activities.

{¶26} Grandmother's main argument for reversal is her allegation that Grandfather would not facilitate K.G.'s relationship with other people significant to the child. There is no dispute that Grandmother's and Grandfather's relationship was difficult when they shared joint custody of Father as a child. In addition, Mother has a strained relationship with Grandfather, which Grandfather attributes to the role he played in encouraging CSB involvement based on concerns about Mother's and Father's drug use.

{¶27} The evidence established that Grandfather facilitated contact between the child and others outside of Grandfather's home. Grandmother had physical possession of the child for

several days during Grandfather's extended visit. In addition, Grandmother enjoyed video calls with the child on a regular basis. In fact, Grandfather enabled daily contact for the child with Grandmother and the kinship caregiver on alternating days. Grandfather remained in contact with Father, as well, as Father awaited the resolution of criminal charges in South Carolina. Although Grandfather called and texted Mother approximately 22 times during the child's month-long stay, Mother never answered any calls or texts. Late in the visit, Grandfather sought an alternative phone number for Mother from Grandmother. Mother failed to respond to any communications from Grandfather at that number either. The parties agreed that, given Mother's strained relationship with Grandfather, she might be loath to accept any calls from him. In any event, Grandfather attempted repeatedly to facilitate the child's contact with Mother.

{¶28} The CSB caseworker testified that Grandfather facilitated adequate family contact for the child during his extended visit. Moreover, the caseworker believed that Grandfather would continue to do so in the future. When the guardian ad litem presented her report, she testified that she had witnessed Grandfather's attempts to contact Mother. Accordingly, despite Mother's concerns that Grandfather would impede her contact with K.G., the guardian ad litem reported that she had no reason to believe that Grandfather would not facilitate the child's contact with his family. Grandfather executed an affidavit of understanding for legal custody and also testified that he understood the parents' right to have contact with the child.

{¶29} Based on a thorough review of the evidence, this Court cannot say that this is the exceptional case in which the juvenile court clearly lost its way and committed a manifest injustice in awarding legal custody to Grandfather, rather than to Grandmother. Both grandparents were approved for placement via ICPC assessments, and both are capable of meeting the basic needs of the child. Extended visits in the homes of both Grandmother and Grandfather went well. The

11

child enjoyed visits and contacts during those extended visitations with other family members. The agency and guardian ad litem each remained neutral, explaining that the child's best interest and basic needs would be met in either grandparent's home. As the record does not demonstrate that the juvenile court's award of legal custody to Grandfather was against the manifest weight of the evidence, this Court declines to reverse the lower court's judgment. Grandmother's second and third assignments of error are overruled.

III.

{¶30} Grandmother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CALLAHAN, P. J.
CARR, J.
CONCUR.

APPEARANCES:

ROBERT C. ALDRIDGE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

TAD ORVAL HOOVER and CHERYL L. GREEN, Attorneys at Law, for Appellee.

DAVID LOWRY, Attorney at Law, for Appellee.

LAURIE M. BOVEINGTON, Attorney at Law, for Appellee.

SHUBHRA AGARWAL, Guardian ad Litem.