[Cite as *In re A.B.*, 2026-Ohio-612.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

IN RE: A.B.
    Ame.M.
    Ama.M.

C.A. Nos.    25AP00003
               25AP00004
               25AP00005

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE Nos.   2022 JUV-C 000700
           2022 JUV-C 000701
           2022 JUV-C 000702

DECISION AND JOURNAL ENTRY

Dated: February 23, 2026

SUTTON, Judge.

{¶1} Appellant Mother appeals the judgment of the Wayne County Court of Common Pleas, Juvenile Division, that granted legal custody of her three children to third parties. This Court affirms the judgment in case numbers 25AP0003 and 25AP0004, and dismisses the appeal in case number 25AP0005.

I.

{¶2} Mother is the biological mother of Ama.M., born October 16, 2007; Ame.M., born July 21, 2016; and A.B., born May 16, 2018. None of the children's respective fathers have appealed.

{¶3} In 2018, Wayne County Children Services Board ("CSB" or "the agency") initiated cases involving the family in the juvenile court based on concerns of domestic violence between

Mother and A.B.'s father ("Father B.") committed in the presence of the children. The court issued a no contact order between Father B. and the children. The agency removed the children from Mother's home in 2019, based on Father B.'s violations of the no contact order. In that same year, Ama.M. disclosed that Father B. had sexually abused her. Although CSB concluded after its investigation that sexual abuse was "Indicated[,]" Ama.M. recanted her allegation, thwarting the criminal case against Father B. In 2020, the juvenile court closed CSB's cases after returning the children to Mother's custody but kept the no contact order between Father B. and the children in effect.

{¶4} In September 2022, CSB learned that Ama.M. had recently confided in someone that Father B. had been sexually abusing her for years and that the abuse was continuing. The agency learned that Mother had also confided in the same person about ongoing domestic violence and sexual abuse in the home, both perpetrated by Father B. Based on this information, CSB removed the children from the home and filed complaints alleging that Ama.M. was an abused, neglected, and dependent child; and that Ame.M. and A.B. were dependent children.

{¶5} Mother waived her right to both adjudicatory and dispositional hearings. She stipulated that Ama.M. was abused and dependent, and that Ame.M. and A.B. were dependent. She further agreed to the juvenile court's placement of the children in CSB's temporary custody; supervised visitation; no contact orders between Father B. and Mother, and Father B. and the children; and to the adoption of the agency's case plan as an order. Mother's case plan objectives included obtaining psychological and domestic violence assessments, following all recommendations, and demonstrating the ability to meet the children's basic needs.

{¶6} The evidence adduced at three review hearings during the first year of the case demonstrated that Mother was making consistent progress on her case plan objectives. The

juvenile court gradually increased her visitation and dispensed with the need for supervision, ordering that Mother could have unrestricted and unsupervised visits, except that she could not have the children overnight. Based on Mother's progress, CSB moved for a first six-month extension of temporary custody. All parties waived their right to a sunset dispositional hearing and stipulated to the first six-month extension.

{¶7} Prior to the end of that initial extension of temporary custody, CSB moved to place the children in the legal custody of their kinship caregivers ("Cousins"). The agency alleged that the parents had failed to make substantial case plan progress since the prior extension of temporary custody. In addition, CSB alleged various concerns about Mother's ability to protect the children on a long-term basis. Ama.M.'s attorney also moved for legal custody to Cousins. The guardian ad litem supported these motions. Cousins executed the statutorily required statement of understanding for legal custody. Mother moved for a second six-month extension of temporary custody.

{¶8} The magistrate held an evidentiary hearing on the parties' motions, followed by an in camera interview of then sixteen-and-a-half-year-old Ama.M. to determine that child's wishes. Thereafter, the magistrate issued a decision recommending that the three children be placed in the legal custody of Cousins. Mother filed timely objections to the magistrate's decision. CSB filed a brief in opposition.

{¶9} The juvenile court issued a judgment overruling Mother's objections and placing the children in the legal custody of Cousins. Mother timely appealed. She raises two assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN DENYING THE MOTHER'S MOTION TO EXTEND TEMPORARY CUSTODY AND GRANTING LEGAL CUSTODY TO CUSTODIAN[S].

{¶10} Mother argues that the juvenile court erred by awarding legal custody of the children to Cousins in lieu of granting Mother's request for a second six-month extension of temporary custody. This Court disagrees.

{¶11} As an initial matter, we note that Ama.M. attained the age of majority prior to submission of the appeals to this Court for consideration. Accordingly, we dismiss appellate case number 25AP0005, as Mother's appeal as to that child is moot. Our opinion addresses Mother's assignments of error solely as they relate to Ame.M. and A.B. We refer to facts involving Ama.M. only to the extent that that child's circumstances are relevant to the two minor children.

{¶12} Mother focuses her argument on the denial of her motion for an extension of temporary custody. However, to facilitate review, this Court addresses her manifest weight challenge as to both the award of legal custody and the denial of an extension as those two issues are intertwined.

> On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence. Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest.

(Internal citations and quotations omitted.) *In re M.F.*, 2016-Ohio-2685, ¶ 7 (9th Dist.).

{¶13} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder

of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations and quotations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶14} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 2016-Ohio-1330, ¶ 12 (9th Dist.). The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 2016-Ohio-7994, ¶ 18 (9th Dist.), quoting *In re N.P.*, 2004-Ohio-110, ¶ 23 (9th Dist.). In that regard, the juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 2008-Ohio-5003, ¶ 9 (9th Dist.), citing *In re T.A.*, 2006-Ohio-4468, ¶ 17 (9th Dist.).

{¶15} The best interest factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 2014-Ohio-2748, ¶ 16 (9th Dist.). In addition, the juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re K.A.*, 2017-Ohio-1, ¶ 17 (9th Dist.). While some factors overlap with those above, others include the child's adjustment to his or her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio. R.C. 3109.04(F)(1).

{¶16} CSB removed the three children from Mother's home on two separate occasions based on incidents of domestic violence between Mother and Father B., as well as indications of sexual abuse of Ama.M. by Father B. Ame.M. and A.B. were very young during CSB's involvement both times, and they have spent large portions of their lives outside of Mother's care. At the time of the hearing, Ama.M. was 16 years old, Ame.M. was seven years old, and A.B. was five years old.

{¶17} The two minor children have adjusted well in Cousins' home. Cousins are willing and able to provide for the siblings' basic needs. The children are comfortable there and have developed strong bonds with Cousins. Ama.M. uses one of the two bedrooms available to the children, while Ame.M. and A.B. share the other. Cousins are currently modifying the basement to create three additional bedrooms and provide emergency egress in compliance with law. The siblings will move into their new bedrooms after Cousins' expected baby is born.

{¶18} Cousins ensure that the children attend school regularly, as well as all counseling and medical appointments. They cooperate with Mother to facilitate liberal visitation and permit daily phone calls between Mother and the children. Cousins clearly enunciated their understanding of their duties as legal custodians for the children and each parent's residual parental rights. They indicated their intent to meet their obligations and to honor all residual parental rights, while providing a safe and stable environment for the children. The guardian ad litem opined that placing the children in Cousins' legal custody would be in their best interest. The preponderance of the evidence established that Cousins are appropriate long-term caregivers for the children.

{¶19} Mother, on the other hand, was unable to reassume legal custody at the time of the hearing. Her case plan objectives, which were designed to address the concerns that brought the children into agency care, remained substantially unfulfilled.

{¶20} Based on her involvement in domestically violent relationships, particularly as those occurred in the presence of the children, Mother had to complete a domestic violence assessment and follow all recommendations. She did an assessment and began the recommended individual counseling at OneEighty in December 2022, but her services were terminated for repeated no shows and cancellations. Six months later she started services at Phoenix Counseling, where she participated from the summer of 2023 until December 2023, when her insurance lapsed. After reinstating her insurance coverage, she reengaged with OneEighty in March 2024. Mother completed a new assessment but had not attended any counseling sessions by the date of the hearing a month later. Overall, her domestic violence counseling was sporadic and inconsistent.

{¶21} The case plan also required Mother to obtain a psychological assessment and follow through with all recommendations. She completed her assessment at Lighthouse Family Center. The results recommended that she engage in individual counseling to address her involvement in domestic violence, consider psychiatric services and medication management for her depression, manage her physical health issues, work on her strained relationship with Ama.M. and engage in family counselling to better understand the child's depression and trauma stemming from sexual abuse, and abstain from any romantic relationships until she had the opportunity to work through her own trauma and domestic violence issues with Father B. Mother's assessment identified her as being at high risk for future involvement with domestically violent partners.

{¶22} Mother did not engage consistently in counseling, and she opted not to use medications to help manage her mental health diagnoses, including depression and post-traumatic stress disorder. While she was open to joint counseling with Ama.M., she participated in counseling only with the two younger children, failing to follow through to coordinate family

counseling with her oldest child. Mother's and Ama.M.'s relationship remained strained throughout the case.

{¶23} Of greatest concern to the caseworker was Mother's ongoing involvement with two men who posed a risk to both Mother and the children. First, despite a no contact order, Mother remained in touch with Father B., the man who had sexually abused Ama.M. The caseworker testified that she tried to update Father B. regarding A.B.'s case, but Father B. told her he would just get updates from Mother. Ame.M. and A.B. both knew information about Father B., including where he lived, which they could only have known if Mother was in contact with him and allowing the children to have contact with him, in violation of the protection order.

{¶24} Second, during the case, Mother became romantically involved with another man, Mr. D.B., contrary to the recommendation arising out of her psychological assessment that she abstain from any such relationships until after she had addressed various issues. The caseworker testified that Mr. D.B. has criminal and child welfare histories, including abuse cases involving his own children. Mother and her father invited Mr. D.B. to the home where Mother was living with her parents so that he and the younger children could meet. Mother told the children not to tell anyone that they had met Mr. D.B. or they would not be able to see Mother anymore. Trying to keep Mother's secret caused distress for A.B. who began experiencing incidents of incontinence and emotional disturbances. Mother initially denied that she had introduced Mr. D.B. to the children but she later admitted to the caseworker that she had.

{¶25} Mother's final case plan objective required her to demonstrate the ability to meet the children's basic needs. Mother has worked full-time for more than three years with her current employer. She receives benefits, including health insurance, although it was unknown whether she could cover the children under her plan. Mother has not had appropriate housing throughout

the cases, however. The Metropolitan Housing Authority evicted Mother from her home. The caseworker made referrals to Catholic Charities and other agencies to help Mother resolve her housing issues, but she did not follow through with any referrals. On two separate occasions, Mother told the caseworker that she was in the process of securing a home, one in Brook Park and one in Medina. Both opportunities fell through when Mother was unable to gather enough money for the required security deposits. Without the ability to obtain independent housing, Mother lived with her parents and adult brother in her parents' three-bedroom trailer home. The home is not large enough to accommodate the children. More significantly, the home is located in a retirement community that does not permit residents under the age of 55 years. Although the children could visit in that home, the caseworker confirmed with the community director that they could not reside there.

{¶26} Based on a thorough review of the evidence, this is not the exceptional case in which the trier of fact clearly lost its way and created a manifest miscarriage of justice by awarding legal custody of the children to Cousins. By all accounts, Cousins were willing and able to provide a long-term safe, stable, and fully appropriate home for the children. On the other hand, the evidence demonstrated that Mother was not in a position to do so. Accordingly, the juvenile court did not err by awarding legal custody of Ame.M. and A.B. to Cousins.

{¶27} In consideration of Mother's argument that the juvenile court erred by failing to grant her motion for a six-month extension of temporary custody, this Court disagrees. As stated above, the juvenile court must resolve a motion for legal custody solely in consideration of the best interest of the child. *In re K.H.*, 2016-Ohio-1330, at ¶ 12 (9th Dist.). The preponderance of the evidence demonstrates that CSB met its burden of proving that legal custody to Cousins is in the children's best interest.

{¶28}  In addition, the juvenile court would have had authority to grant a second six-month extension of temporary custody only if it also found, by clear and convincing evidence, that "there has been substantial additional progress since the original extension of temporary custody in the case plan of the child, . . . and there is reasonable cause to believe that the child will be reunified with one of the parents . . . before the expiration of the additional extension period."  R.C. 2151.415(D)(2).  As explained above, Mother failed to make substantial additional progress on her case plan objectives.  Moreover, there was not reasonable cause to believe that the three children could have been reunified with Mother within the period of extension.

{¶29}  Mother had not engaged in counseling services on a consistent enough basis to address her mental health and domestic violence issues.  In fact, she continued to maintain relationships with two men with histories of violence against household members.  Mother ignored the no contact order prohibiting contact between Father B. and Mother and the children.  She had furthermore begun a romantic relationship with Mr. D.B. who has committed acts of violence against one or more of his own children.  Despite the caseworker's discussions with Mother regarding the impropriety of her relationship with Mr. D.B., Mother exposed her children to him.  She continues to demonstrate a lack of insight into the impact her ongoing relationships with Father B. and Mr. D.B. have on the children.  Mother additionally has not obtained appropriate housing for herself or the children.  Neither Mother nor the children are permitted to reside in the maternal grandparents' home based on community age restrictions.  Under these circumstances, Mother failed to present clear and convincing evidence that she made substantial additional progress on her case plan objectives and that reunification was reasonably likely to occur within another six months.

{¶30} For the above reasons, this Court concludes that the juvenile court did not err by denying Mother's motion for a second six-month extension of temporary custody and granting CSB's motion for legal custody to Cousins. Accordingly, Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY FAILING TO ADEQUATELY ASCERTAIN AND GIVE DUE REGARD TO THE WISHES OF THE MINOR CHILDREN.

{¶31} Mother argues that the juvenile court erred by failing to ascertain the wishes of Ame.M. and A.B. in considering whether to grant legal custody of the children to Cousins. This Court disagrees.

{¶32} Procedurally, Mother has appealed the juvenile court's judgment that ruled on her objections to the magistrate's decision arising out of the legal custody hearing. Accordingly, she is limited by Juv.R. 40 as to the issues she may raise on appeal. That rule provides:

> Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

Juv.R. 40(D)(3)(b)(iv).

{¶33} In her objection, Mother argued that "because the guardian ad litem failed to ascertain and/or report the two youngest children's wishes, the Court should have sua sponte, in its own discretion, interviewed the two youngest children in chambers in order to determine their wishes and concerns." Mother does not argue plain error on appeal. Accordingly, we are constrained to construe her argument as assigning error to the juvenile court's failure to interview Ame.M. and A.B. in chambers to ascertain their wishes regarding custody in consideration of the children's best interest.

{¶34} As noted above, R.C. Chapter 2151 does not enunciate a set of factors for the juvenile court to consider when determining whether to grant legal custody of a child. *In re B.B.*, 2016-Ohio-7994, at ¶ 18 (9th Dist.) The best interest considerations relating to permanent custody determinations in R.C. 2151.414(D) do not make any specific reference to in camera interviews of children regarding their wishes. However, R.C. 3109.04, which provides additional guidance as to the best interest of a child, addresses the trial court's use of in camera interviews. Specifically, R.C. 3109.04(B)(1) provides:

> In determining the child's best interest for purposes of [ordering custody]. . . , the court, in its discretion, may and, upon the request of [any] party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to [custody].

{¶35} In this case, one of the parties requested an in camera interview of Ama.M., and the magistrate conducted one. However, no party asked the juvenile court to interview Ame.M. and/or A.B. in chambers to ascertain their wishes as to custody. Had Mother been dissatisfied with the report of the guardian ad litem who wrote that the two youngest children were "not of sufficient age or maturity to understand the gravity of their current situation[,]" she could have moved the magistrate to interview those children, as well. The juvenile court's first determination would have then been the reasoning ability of the children. R.C. 3109.04(2)(b). Mother did not raise that issue before the juvenile court and cannot now challenge the trial court's finding as to the opinion of the guardian ad litem that Ame.M. and A.B. were unable to express their wishes due to lack of understanding.

{¶36} Moreover, Mother has not demonstrated on appeal that the juvenile court abused its discretion by failing to sua sponte interview the two youngest children. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The children were seven and five years old at the time

of the hearing. The caseworker testified that A.B. showed some signs of developmental delays. The guardian ad litem submitted an initial and two supplemental reports relative to the legal custody hearing. Each report evidenced a depth of investigation as to the issues relevant to the best interest of the children. Mother never challenged the guardian's opinion that the two youngest children were not mature enough to express their wishes as to custody. Under these circumstances, the juvenile court was not unreasonable when it did not sua sponte interview Ame.M. and A.B. in chambers to determine, first, their reasoning abilities, and second, if determined to be capable of understanding, their wishes as to custody.

{¶37} Notwithstanding the above discussion, assuming without deciding that the juvenile court erred by failing to interview the two youngest children as to their wishes, any error was harmless. Consideration of a child's best interest necessarily implicates a balancing or weighing of the factors. *See In re T.S.*, 2025-Ohio-2140, ¶ 31 (9th Dist.). In this case, even if Ame.M. and A.B. possessed adequate reasoning abilities to understand the issue of their custody and would have articulated the desire to return to Mother's care, the evidence adduced at the hearing and set out above supported the juvenile court's award of legal custody to Cousins. Accordingly, if the trial court's failure to interview the two youngest children constituted error, any error was harmless. Mother's second assignment of error is overruled.

III.

{¶38} Mother's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, regarding A.B. and Ame.M. is affirmed. The appeal regarding Ama.M. is dismissed.

Judgments in case numbers 25AP0003 and 25AP0004 affirmed.
Appeal in case number 25AP0005 dismissed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
CARR, J.
CONCUR.

APPEARANCES:

YU MI KIM-REYNOLDS, Attorney at Law, for Appellant.

ANGELA POTH-WYPASEK, Prosecuting Attorney, and ALEXANDER MONTVILAS, Assistant Prosecuting Attorney, for Appellee.