[Cite as *In re K.A.*, 2017-Ohio-1.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: K.A.

C.A. Nos.     15CA010850
                15CA010860

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    14JC44326

DECISION AND JOURNAL ENTRY

Dated: January 3, 2017

CANNON, Judge.

{¶1}     Appellants, Amy A. ("Mother") and Kirk B. ("Father"), each separately appeal from the judgment of the Lorain County Court of Common Pleas, Juvenile Division, that found their minor child, K.A., to be dependent and placed him in the legal custody of the maternal grandparents ("Grandparents"). The appeals were consolidated without objection on January 29, 2015. This Court affirms.

I.

{¶2}     Mother and Father are the unmarried parents of K.A., the child who is the subject of this appeal, born December 10, 2014. Mother has five older children, and Father is the parent of three of them. K.B., the youngest of the older five children, was born on June 15, 2013 with cocaine in her system, and Mother also had cocaine in her system when she gave birth to K.B. Shortly thereafter, the agency initiated an action in juvenile court with respect to all five children. On September 25, 2013, all five children were adjudicated neglected and dependent,

and K.B. was additionally adjudicated abused. The five children were initially permitted to remain in Mother's custody under the protective supervision of Lorain County Children Services ("LCCS"). Father did not reside in the same home, but spent time there and assisted with the care of the children. On or about April 28, 2014, the five children were removed from the home and placed in the temporary custody of various relatives.

{¶3} K.A. was born thereafter on December 10, 2014. One week later, LCCS filed a dependency complaint in juvenile court, and emergency temporary custody was awarded to LCCS. The agency placed the infant with Grandparents.

{¶4} The matter involving the five older children progressed, and on December 31, 2014, the trial court awarded legal custody of those children to four different family members. Two of the children had different fathers and they were each placed with a paternal relative. With respect to the three that were the biological children of Father and Mother, one was placed with a maternal uncle and aunt, and two were placed with Grandparents. *See In re T.A.*, Lorain C.P., Juvenile Div., Nos. 13JC39530, 13JC39531, 13JC39532, 13JC39533, 13JC39534, affirmed *In re T.A.*, 9th Dist. Lorain Nos. 15CA010858, 15CA010859, 2016-Ohio-5552.

{¶5} K.A.'s case proceeded separately. In due course, the trial court adjudicated K.A. to be dependent and granted legal custody of the child to Grandparents. Each parent has appealed from the judgment of the trial court. Mother has assigned one error for review and Father has assigned three errors for review. Some of the assignments of error are combined for ease of discussion.

II.

**<u>MOTHER'S ASSIGNMENT OF ERROR</u>**

THE TRIAL COURT FAILED TO GIVE THE EVIDENCE ADEQUATE
WEIGHT WHEN IT ADJUDICATED MINOR CHILD K.A., A DEPENDENT

CHILD, AND GRANTED LEGAL CUSTODY TO [MATERNAL GRANDPARENTS].

## FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN ADJUDICATING [K.A.] DEP[E]NDENT AS THE DECISION WAS AGAINST THE WEIGHT OF THE EVIDENCE.

## FATHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT GRANTED LEGAL CUSTODY OF K.A. TO MATERNAL GRANDPARENTS INSTEAD OF FATHER AS LEGAL CUSTODY IS NOT IN K.A.'S BEST INTERESTS.

{¶6} Mother's sole assignment of error and Father's first and second assignments of error challenge the adjudication of the child as well as the award of legal custody to Grandparents.

Adjudication

{¶7} We first consider the adjudication of dependency. R.C. 2151.04 contains the various definitions of "dependent child." The trial court apparently relied on R.C. 2151.04(D) in its adjudication of K.A. R.C. 2151.04(D) provides that a dependent child is any child to whom both of the following apply:

(1) The child is residing in a household in which a parent * * * committed an act that was the basis for an adjudication that a sibling of the child * * * is an abused, neglected, or dependent child.

(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling * * * and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent[.]

{¶8} The complaint in the present case, filed on December 17, 2014, alleges that Mother's five other children, siblings of K.A., were adjudicated neglected and dependent and that the youngest of the five, K.B., was additionally adjudicated abused. That adjudication took place on September 24, 2013, prior to the commencement of the present case. K.A.'s Father is

the parent of three of the five siblings. K.A. was in Mother's care before being placed with Grandparents. Although Mother has consistently denied that she ever used cocaine (instead she claims she had cleaned a home that contained the drug), she concedes that she and K.B. had cocaine in their systems. Neither parent has specifically challenged the notion that R.C. 2151.04(D)(1) is satisfied.

{¶9} The second portion of this definition of dependency is whether, "[b]ecause of the circumstances surrounding the abuse, neglect, or dependency of the sibling * * * and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent[.]" *See* R.C. 2151.04(D)(2).

{¶10} In response to this point, Mother asserts that she now has an appropriate and clean home, is currently engaged in mental health counselling, and there were no reports of drug abuse at the time the complaint was filed with respect to K.A. Mother asserts that the maternal grandfather had no concerns about Mother's care for the child and that the caseworker believed Mother could meet the basic needs of K.A. However, the record demonstrates that numerous concerns and conditions that existed in the prior case continued to exist when the present case began.

{¶11} The same caseworker was involved in both cases. The caseworker testified that, despite the case planning services that were put in place in the earlier case, she remained concerned with Mother's ability to care for her children on a long-term basis. She said Mother was able to meet her children's needs during the brief and structured visitation sessions, but she failed to demonstrate that she could provide for their needs on a long-term basis. In addition, she explained that Mother lacked insight into the need for her to make changes. According to the caseworker, Mother believed there was nothing wrong with the way she cared for her children

before LCCS intervened. She said Mother denied the existence of issues and never took responsibility for any of the problems, including the condition of her home, her substance abuse, and the children's poor school attendance. The caseworker was, therefore, concerned that if Mother regained custody of her children, she would revert to her former ways instead of making recommended changes.

{¶12} The caseworker testified that the same conditions that led to the adjudications of the five older children were still present. She specifically cited Mother's mental and emotional instability, Mother's inability to meet the needs of her children on a long-term basis, and Mother's poor judgment. In addition to the discovery of cocaine in the systems of Mother and K.B., there were two additional incidents that raised concerns about substance abuse: a positive opiate screen for which Mother could not produce a prescription bottle, and a report that Mother was making suicidal threats and taking unknown pills. The caseworker was concerned that these continuing conditions placed K.A. at risk of abuse or neglect.

{¶13} The agency was also concerned about Mother's lack of cooperation with the agency, and, in particular, her failure to be forthcoming with the agency in regard to her plans for the child. Mother demonstrated an unwillingness to follow through with case plan objectives and refused to sign releases of information. The caseworker said that when the agency learned of Mother's pregnancy with K.A., Mother told the caseworker that she would not be keeping the baby, but rather that she was acting as a surrogate for another woman who could not have children. Yet, Mother told other service providers that she had all of her supplies ready for the new baby and was preparing to bring him home. Shortly after K.A. was born, the caseworker and her supervisor made a home visit, and Mother refused to provide any information on the baby, including the child's name, date of birth, sex, or place of birth. The agency thus believed

that the circumstances surrounding the abuse, neglect, or dependency of the siblings continued and that K.A. was in danger of being abused or neglected. Accordingly, R.C. 2151.04(D)(2) is satisfied.

{¶14} For his part, Father contests the finding of dependency on the basis that his own actions did not create or contribute to K.A.'s dependency. However, the Ohio Supreme Court has held that "[a] juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, paragraph two of the syllabus. Accordingly, "[w]hen a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent." *Id.* at paragraph three of the syllabus.

{¶15} The record does not demonstrate that the trial court clearly lost its way and created a manifest miscarriage of justice in finding clear and convincing evidence that the child was dependent. *See Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. Neither parent has established that the trial court erred in adjudicating K.A. to be a dependent child. Consequently, the trial court did not err in adjudicating K.A. to be a dependent child. Mother's argument with respect to the finding of dependency is overruled. Father's first assignment of error is overruled.

Disposition

{¶16} Next, with respect to disposition, each parent claims that the trial court erred in granting legal custody of K.A. to Grandparents and that the court should have granted legal custody to either of them instead.

{¶17} We review a juvenile court's award of legal custody for an abuse of discretion. *In re L.B-R.*, 9th Dist. Summit No. 27201, 2015-Ohio-2622, ¶ 5. An abuse of discretion implies that a trial court was unreasonable, arbitrary, or unconscionable in its judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child. *See In re D.R.,* 153 Ohio App.3d 156, 2003-Ohio-2852, ¶ 17 (9th Dist.). "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision on the best interest of the child." *In re N.P.,* 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton,* 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11. In making this determination, "courts have looked to the best interest factors of R.C. 2151.414(D), R.C. 3109.04(F)(1), a combination of the two, or general notions of what should be considered regarding the best interests of the children." (Citations omitted.) *In re A.K.*, 9th Dist. Summit No. 26291, 2012-Ohio-4430, ¶ 25. The best interest factors under R.C. 2151.414(D)(1) include: the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence in his or her life, and any relevant factors under R.C. 2151.414(E)(7) through (11). *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. The additional and relevant best interest factors under R.C. 3109.04(F)(1) include: the child's adjustment to their home, school, and community, the mental and physical health of all the persons involved in the situation, the parents' likelihood to honor and facilitate court-approved parenting time or visitation rights, and whether a parent or a member of their household has been involved in a criminal offense that resulted in a child being adjudicated an abused or neglected child. Upon review, this Court concludes that the record fails to

demonstrate that the trial court abused its discretion in finding that an award of legal custody of K.A. to Grandparents is in the best interest of the child.

Father

{¶18} First, with respect to Father, the record indicates that he currently resides in a single rented room. There is no evidence as to how long he has resided there or where he lived previously. LCCS reported that Father had previously provided the caseworker with only a mailing address. Father claims he has employment, although the record does not explain what sort of work he does. In his objection to the magistrate's report, Father indicated that he was self-employed.

{¶19} Father testified that he has been involved with Mother since at least 2013, and they continue to be in a relationship, but he does not live with Mother. Father testified about his help with the baby. He said that he "got up with him" if Mother needed a break, held him, and bought diapers and clothing for him. He stated that, if he were awarded custody, he would have adequate supplies to meet the needs of the child and would be able to take care of him. He said he would be able to rent an additional room for the child. He said he has three or four people he trusts to care for the child while he works, as he apparently works long hours.

{¶20} Father did not seek custody of his three older children in the prior case, and did not seek legal custody of K.A. in the present case until February 9, 2015, the day set for the adjudicatory hearing. Even though Father's current case plan required him to notify LCCS of his intentions as to K.A., Father admitted that he never told LCCS he wanted custody of K.A.

{¶21} The caseworker expressed concerns about Father's ability to provide for K.A. or to take care of him independently on a long-term basis. She stated that Father has never voiced an intention to her that he desired custody of the child. She described Father's involvement

throughout the case as "passive" and that he has gone along with Mother's wishes. Father did not engage with children services employees when they came for a home visit, because he "thought [Mother] was the one in control of it." The caseworker believed that if Father were granted any form of custody, he would not be the primary caregiver, but rather that Mother would be.

{¶22} The guardian ad litem, who participated in both cases involving this family, also expressed concerns with Father having custody. He said that Father was observed to be appropriate with K.A. and is "just a nice guy," but that Father has been in this process for over a year and never telephoned the guardian ad litem or expressed any interest in anything regarding any of his children. The guardian ad litem said that there is no question Father loves the child and is a stabilizing force in Mother's home. He believes Father wants to be involved in his children's lives, but he is not able to be a primary caregiver. Not only does he work a lot of hours, but when the guardian ad litem inquired about Father's intentions and arranging for a visit to his home, Father told him it was not necessary to visit his home because he probably would not have K.A. over there. Father said that if he was going to spend time with K.A., it would be at Mother's home. The guardian ad litem believes Father is not the issue, except that "[Father] would be with [Mother.]"

Mother

{¶23} We next consider the evidence in regard to Mother. Although Mother has kept her new home appropriately clean since the children have been removed, and has had no further instances of substance abuse during the present case, the LCCS caseworker expressed concern with several issues that have not improved since the prior case: Mother's mental and emotional stability, her ability to meet the needs of the child long term, her antagonism to and lack of

cooperation with the agency, and her irrational judgment on some matters.

{¶24} Mother was able to meet the needs of the child for short periods of time in the structured setting of visitation, but the caseworker did not believe Mother would be able to provide for the child on a long-term basis. The maternal grandfather similarly expressed his uncertainty about Mother's ability to provide care for the child on a long-term basis.

{¶25} Although case plan services had been put in place, the caseworker believes Mother has just been "going through the motions for over a year." Mother failed to demonstrate that real change has taken place, particularly in regard to her emotional stability and mental health concerns. Mother said she does not believe that she has any concerns to address or that there are any changes that need to be made by her. She saw no need for any services or the involvement of the agency. Without Mother understanding what needs must be addressed, the caseworker does not believe Mother is able to make the improvements necessary. Mother's consistent failure to recognize the existence of these problems supports the conclusion that Mother had not made the changes addressed by service providers and her case pan.

{¶26} The record includes several examples of Mother's irrational and contentious behavior, as well as her questionable stability. First, when the baby was removed from Mother's home and placed with Grandparents, Mother was still breastfeeding him. She stayed in Grandparents' home overnight to be able to feed K.A. and then came back to the home periodically for feedings during the day. Occasionally, Mother would be late or the baby would be hungry before Mother returned. Mother vehemently refused to allow the maternal grandmother to feed him a bottle of formula or breast milk. The maternal grandmother testified that the last time she talked to Mother about giving a bottle to K.A., Mother called her "a psycho bitch" and denied that she was her mother. On another occasion, K.A. was ill with a cough.

Grandparents did not want to take him out in the very cold weather for a visit scheduled at Mother's home. Mother insisted, however, and told the maternal grandmother that if they did not bring the child there for visitation, she would call the police. A third example took place when Mother made inappropriate comments to two of her older children that had already been placed in Grandparents' home through the prior case. Mother told those two sons, "I'm not Mom anymore. I'm Amy. And those [Grandparents] are -- that's Mom and Dad." Since that time, one of the boys was reported to have had problems with bedwetting. The guardian ad litem, who worked with the family in both cases, could not understand why any mother would ever say that to a child and said: "I don't know what good can come from that." The guardian ad litem provided a final example when he reported that Mother declared that if K.A. is taken away, she would just have another child. Thus, Mother has repeatedly demonstrated poor judgment and a failure to put the needs and well-being of her children first.

{¶27} The guardian ad litem testified that his concerns about Mother have increased over time. He believed that Mother was not getting better, but rather worse.

{¶28} The maternal grandfather testified about Mother's relationship with K.A. He explained that Mother was very helpful during the first month or six weeks, but since then, she only comes to feed the baby and leaves. This is partly because of the contentious relationship between Mother and the maternal grandmother. When asked about changes in Mother during the past year and a half, the maternal grandfather said it was "[o]ff and on * * * [g]ood and bad." He said that Mother's use of alcohol and prescription medication in the beginning was very upsetting, but he thinks she has addressed that or he has not seen it. He added that Mother's temper continues to be a problem. She sometimes exhibits that temper in front of the children and is inappropriate.

{¶29} The evidence before the trial court demonstrates that Mother cannot provide a long-term, stable home for the child because of unaddressed issues and continuing concerns, and furthermore, that if Father obtained custody, Mother would be the primary caregiver instead.

Grandparents

{¶30} The caseworker testified that K.A. is doing well in Grandparents' care. He has resided with them since his removal from Mother's home and for nearly all of the three months of his life. The caseworker explained that Grandparents are very attentive and loving towards him, and they are committed to caring for him over the long-term. The caseworker believes they are capable of caring for K.A. and noted that they have an established relationship with K.A. and his siblings. In fact, they have legal custody of two of the older children that were previously removed from Mother's care, allowing K.A. to maintain that relationship. Grandparents have family support from their son, his wife, and their three children who live down the street. One of their children is a teenager who is capable of providing babysitting assistance. The caseworker is convinced that Grandparents will do their best for him and that granting legal custody to them is in the child's best interest.

{¶31} The guardian ad litem had no concerns about placing the child in the custody of Grandparents. He is confident in their good judgment and believes they are committed to raising K.A. until he is 18 years old.

{¶32} The maternal grandfather stated that he and his wife desire custody of K.A. if the court does not grant custody to Mother. Contrary to Father's argument on appeal, the record contains evidence of the intentions of Grandparents. The maternal grandfather testified that they would care for the child until he reaches 18 or as long as K.A. needs them. In addition, Grandparents moved for legal custody of K.A. prior to the dispositional hearing and filed a

Statement of Understanding as required by R.C. 2151.353(A)(3)(b).

Conclusion

**{¶33}** Mother and Father have failed to demonstrate that the trial court abused its discretion in adopting the magistrate's decision that placed the child in Grandparents' legal custody. Based upon the record before this Court, we conclude that the trial court reasonably determined that it was in the best interest of K.A. to be placed in the legal custody of Grandparents. Mother's sole assignment of error is overruled. Father's first and second assignments of error are overruled.

## FATHER'S ASSIGNMENT OF ERROR III

> THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN FAILING TO MAKE FINDINGS REGARDING WHETHER LCCS MADE REASONABLE EFFORTS.

**{¶34}** Father has argued that the trial court erred in failing to make appropriate findings regarding whether LCCS made reasonable efforts towards reunification. Father neglected, however, to enter an objection to the magistrate's purported failure to issue written facts supporting the reasonable efforts determination as he has claimed on appeal. Furthermore, although Father includes the language "plain error" in his assigned error, he has not made any plain error argument or explained how he was prejudiced. Because Father failed to raise this issue in the trial court and has not argued plain error on appeal, he has failed to preserve the issue for appellate review. *See In re M.C.,* 9th Dist. Summit Nos. 27116, 27117, 2015-Ohio-1627, ¶ 28, citing Juv.R. 40(D)(3)(a) and *In re M.T-B.*, 9th Dist. Summit No. 26866, 2013-Ohio-4998, ¶ 15. Consequently, we do not reach the merits of this argument. Father's third assignment of error is overruled.

III.

{¶35} Mother's sole assignment of error is overruled. Father's three assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

TIMOTHY P. CANNON
FOR THE COURT

CARR, P. J.
MOORE, J.
CONCUR.

(Cannon, J. of the Eleventh District Court of Appeals, sitting by assignment.)

APPEARANCES:

SEAN A. BORIS, Attorney at Law, for Appellant.

ROBERT CABRERA, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and EMILY W. KIRSCH, Assistant Prosecuting Attorney, for Appellee.

JAMES BARILLA, Guardian ad Litem.