[Cite as *In re L.C.*, 2022-Ohio-183.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: L.C.

C.A. No. 29914

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. DN 19 11 1171

DECISION AND JOURNAL ENTRY

Dated: January 26, 2022

CARR, Judge.

{¶1} Appellant, D.N. ("Mother"), appeals a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her minor child in the legal custody of S.E. ("Custodian"). This Court affirms.

I.

{¶2} Mother is the biological mother of L.C., born November 24, 2018. The biological father of L.C. has not been identified.

{¶3} Mother has two older children who were removed from her custody during 2017, and later adjudicated dependent because they were not being supervised; lived in a deplorable home; and were regularly exposed to illegal drug use and drug sales in the home. When Mother initially met with Summit County Children Services Board ("CSB"), she tested positive for methamphetamine and amphetamine. The focus of that case was on Mother addressing her

substance abuse problem, but Mother did not comply with the case plan. The older children were placed in the legal custody of Custodian, their paternal grandmother, on August 10, 2018.

{¶4} L.C. was removed from Mother's custody shortly after birth because of Mother's ongoing substance abuse problem and concerns that she also suffered from untreated mental health problems. L.C. was adjudicated dependent and placed in the temporary custody of CSB. L.C. was placed in the home of Custodian, where her two older siblings already resided.

{¶5} Among other things, the court-ordered case plan required Mother to obtain mental health and substance abuse assessments and follow any treatment recommendations. For the next year, however, Mother failed to comply with those components of the case plan. She continued to test positive for drugs and did not begin any substance abuse treatment. Mother engaged in counseling sporadically, but she did not obtain a mental health assessment in this case. During October 2019, Mother stopped participating in counseling services.

{¶6} On February 4, 2020, CSB moved the trial court to place L.C. in the legal custody of Custodian. Mother alternatively requested a second six-month extension of temporary custody because she had reengaged in some case plan services. The case proceeded to a dispositional hearing in July 2020. Following a hearing, the magistrate decided that L.C. should be placed in the legal custody of Custodian. Mother filed objections, which were overruled by the trial court. The trial court entered an independent judgment placing L.C. in the legal custody of Custodian. Mother appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT'S DECISION AFFIRMING THE GRANT OF LEGAL CUSTODY OF THE MINOR CHILD TO [CUSTODIAN] IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶7} Mother's sole assignment of error is that the trial court's legal custody decision was against the manifest weight of the evidence. An award of legal custody must be supported by a preponderance of the evidence. "Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value." (Internal quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7. In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations and quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶8} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. The juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, and the child's

need for permanence. R.C. 2151.414(D)(1)(a)-(d); *see also In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 16.

{¶9} The juvenile court may also consider the best interest factors in R.C. 3109.04(F)(1). *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850 and 15CA010860, 2017-Ohio-1, ¶ 17. While some factors overlap with those set forth in R.C. 2151.414(D), others include the child's adjustment to her environment; the mental and physical health of all persons involved; and whether the proposed custodian is likely to facilitate court-approved visitation or parenting time. R.C. 3109.04(F)(1).

{¶10} Throughout L.C.'s short life, Mother's interaction with the child had been limited to supervised visitation, because Mother failed to comply with the mental health and substance abuse components of the case plan. Mother did not obtain the required mental health assessment or treatment. Although she eventually obtained a substance abuse assessment three months after CSB moved for legal custody, she did not engage in the recommended treatment. Mother testified that she was willing to engage in inpatient treatment, but she had not even enrolled in a program by the time of the hearing. The caseworker testified at the hearing that every drug screen submitted by Mother during this case had tested positive for drugs.

{¶11} Because L.C. was less than two years old at the time of the final hearing, the guardian ad litem spoke on the child's behalf. The guardian ad litem opined that legal custody to Custodian was in the child's best interest because Custodian was meeting all the child's needs; the child was bonded to Custodian, as well as her older siblings who lived in the home; and she was thriving in Custodian's care.

{¶12} L.C. had lived in a temporary placement for her entire short life and needed a legally secure permanent placement. Mother admitted that she was not prepared to provide a stable home for the child at that time. Custodian, on the other hand, was willing and able to provide L.C. with

a suitable permanent home. The trial court reasonably concluded that legal custody to Custodian would provide L.C. with a legally secure permanent placement.

{¶13} Next, considering the additional relevant factors from R.C. 3109.04(F), the evidence demonstrated that L.C. had adjusted to living in Custodian's home. *See* R.C. 3109.04(F)(1)(d). L.C. had lived with Custodian since she was four days old, was doing well there, and had become part of Custodian's family that included L.C.'s two older siblings.

{¶14} There was no evidence that Custodian had any mental or physical health problems that impeded her ability to provide an appropriate home for L.C. *See* R.C. 3109.04(F)(1)(e). Although Mother had not obtained a mental health assessment in this case, she testified that she had been diagnosed in 2003 with multiple mental health disorders, including bipolar disorder, depression, and post-traumatic stress disorder. Nevertheless, she did not consistently engage in mental health treatment during this case. Mother admitted that she had been using illegal drugs since 2016 to cope with her mental health symptoms.

{¶15} The trial court also heard undisputed testimony that Custodian was likely to facilitate visitation between Mother and L.C., as she had done throughout this case. *See* R.C. 3109.04(F)(1)(f). The caseworker testified that Custodian communicated well with Mother and expressed his confidence that Custodian would continue to facilitate L.C.'s visitation with Mother. The testimony of Mother and Custodian also supported a conclusion that Custodian would continue to safely and appropriately facilitate Mother's right to visit her child.

{¶16} Finally, Mother alternatively requested a second six-month extension of temporary custody. This Court has repeatedly emphasized that, if legal custody to a nonparent is in the best interest of the child, an extension of temporary custody is not. *See*, *e.g.*, *In re A.M.*, 9th Dist. Lorain No. 16CA010995, 2017-Ohio-7653, ¶ 41. Although Mother argues on appeal that her

reunification efforts were disrupted by the Covid-19 pandemic, she did not raise that argument below and has not demonstrated plain error. Mother had more than a year to work on the case plan before the pandemic began to cause disruptions during March 2020, but she failed to engage in services that were available to her.

{¶17} Throughout the hearing and on appeal, Mother's counsel emphasized that, because the case had not yet reached the two-year mark, there was still time to allow Mother to work toward reunification with L.C. Although the trial court had not exhausted the two-year time limit for extending temporary custody under R.C. 2151.415(D)(4), this case did not qualify for another extension of temporary custody under R.C. 2151.415(D)(2). The trial court would have had authority to grant a second six-month extension of temporary custody only if it found, by clear and convincing evidence, that the additional extension was not only in the best interest of the child, but also that "there has been substantial additional progress" on the case plan and toward reunification since the first extension of temporary custody, and that "there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise placed in a permanent setting before the expiration of the additional extension period." R.C. 2151.415(D)(2). As explained above, Mother had made almost no progress on the reunification goals of the case plan and there was not reasonable cause to believe that she would be prepared to provide a permanent placement for L.C. within another six-month period.

{¶18} Consequently, Mother has failed to demonstrate that the trial court lost its way in concluding that legal custody to Custodian was in the best interest of L.C. Mother's assignment of error is overruled.

III.

**{¶19}** Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.


DONNA J. CARR
FOR THE COURT


HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.