[Cite as *In re A.M.*, 2025-Ohio-2139.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: A.M.

C.A. No.     31272

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 24 04 0229

DECISION AND JOURNAL ENTRY

Dated: June 18, 2025

---

CARR, Judge.

{¶1}    Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her child in the legal custody of Father under the protective supervision of Summit County Children Services Board ("CSB" or "the agency").  This Court affirms.

I.

{¶2}    Mother is the biological mother of A.M., born July 19, 2007.  Although J.M. was excluded by genetic testing as A.M.'s biological father, he acknowledged his paternity of the child by affidavit after the child's birth and no other man established paternity or sought to set aside J.M.'s establishment of paternity.  Accordingly, this Court adopts the approach of the trial court and refers to J.M. as Father.

{¶3}    The record does not explain with whom A.M. lived during the first six years of his life, or whether Mother and Father remained in a relationship during that time.  For the next eight

years, however, A.M. lived with Father, while Mother lived elsewhere. At some point, A.M. requested and was allowed to move in with Mother who was living with her then-one-year-old child and boyfriend. Mother's boyfriend later left the home to obtain services in a residential drug treatment facility.

{¶4} A.M. had been living with Mother for two years when he ran away and reported to his psychologist that Mother had physically abused him. CSB investigated the situation. Mother admitted that she had engaged in physical altercations with A.M. The agency further confirmed that Mother was using illegal drugs and not taking her prescribed medications for diagnosed mental health issues, and that A.M. was not attending school because he had to take care of his then-three-year-old brother. Thereafter, CSB filed a complaint alleging that A.M. was a dependent child. The then-sixteen-year-old resided at Safe Landing while the agency assessed other placement options.

{¶5} Mother and Father waived their rights to an adjudicatory hearing and stipulated that A.M. was a dependent child as alleged in the complaint. CSB placed the child in Father's home after the agency's Kinship Department assessed and approved his home. The agency filed a case plan with objectives for reunification but moved for legal custody to Father prior to the initial dispositional hearing, requesting that the juvenile court grant that motion and close the case. The guardian ad litem filed a motion for legal custody to Father under CSB's protective supervision. Although the guardian ad litem withdrew his request for protective supervision at the dispositional hearing, the magistrate awarded legal custody to Father but ordered protective supervision by CSB solely to facilitate referrals for services for the child in Father's geographic location and address any transitional issues.

**{¶6}** Mother timely objected to the magistrate's decision, arguing only that the evidence did not support the finding that an award of legal custody to Father was in the child's best interest. CSB responded in opposition. The juvenile court overruled Mother objection, finding that CSB had met its burden of proof. The trial court granted legal custody to Father and maintained the agency's protective supervision during the child's full transition into Father's home. In less than two weeks, CSB filed a motion to terminate its protective supervision, asserting that A.M. was enrolled in his new school and scheduled to begin counseling with a new provider close to Father's home.

**{¶7}** Before the juvenile court could hear CSB's motion to terminate protective supervision, Mother appealed the legal custody judgment[1]. She raises two assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMIT[T]ED AN ABUSE OF DISCRETION IN GRANTING [CSB'S] MOTION FOR LEGAL CUSTODY TO FATHER.

**{¶8}** Mother argues that the juvenile court erred by placing A.M. in the legal custody of Father. This Court disagrees.

**{¶9}** Our standard of review for such challenges is well settled:

On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence. Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best

---

[1] Although the juvenile court maintained the order of protective supervision in its judgment, that order was for the limited purpose of facilitating the child's full transition into Father's home. As the order was not of an indefinite duration and the judgment fully resolved the issue of A.M.'s custodial status, this Court concludes that the judgment invokes our subject matter jurisdiction to review a final and appealable order. *See In re J.B.*, 2022-Ohio-4491, ¶ 14 (9th Dist.).

interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest.

(Internal citations and quotations omitted.) *In re M.F.*, 2016-Ohio-2685, ¶ 7 (9th Dist.).

{¶10} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations and quotations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶11} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 2016-Ohio-1330, ¶ 12 (9th Dist.). The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 2016-Ohio-7994, ¶ 18 (9th Dist.), quoting *In re N.P.*, 2004-Ohio-110, ¶ 23 (9th Dist.). In that regard, the juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 2008-Ohio-5003, ¶ 9 (9th Dist.), citing *In re T.A.*, 2006-Ohio-4468, ¶ 17 (9th Dist.).

{¶12} The best interest factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 2014-Ohio-2748, ¶ 16 (9th Dist.). In addition, the juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re K.A.*, 2017-Ohio-1, ¶ 17 (9th

Dist.). While some factors overlap with those above, others include the child's adjustment to his or her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio. R.C. 3109.04(F)(1).

{¶13} Mother does not develop an argument but, rather, proposes that the juvenile court prematurely awarded legal custody to Father without giving Mother time to work towards reunifying with the child. CSB, however, met its burden of proving by a preponderance of the evidence that A.M.'s best interest was met by an award of legal custody to Father at the initial dispositional phase of the case.

{¶14} A.M. previously lived with Father for eight years until he asked to be able to live with Mother. There was no agency involvement with the family during his time with Father. During his two years in Mother's home, the child lived in conditions not conducive to his safety and stability. Mother stipulated to the allegations in the complaint, including her drug use, untreated mental health issues, and reliance on A.M. to watch his toddler brother when he should have been in school, as well as physical altercations between Mother and A.M. After the child reported physical abuse by Mother to his counselor, he left to stay at Safe Landing.

{¶15} CSB's Kinship Department assessed Father's home and approved it for placement. The agency placed the child in Father's home two weeks before the initial dispositional hearing. While the caseworker admitted that she had never been to Father's home and did not know his financial situation, she testified that, per agency protocol, the kinship assessor would have thoroughly vetted Father's circumstances before approving his home for placement. The caseworker was in contact with Father and his fiancée throughout the case and testified that they

were both involved in coordinating educational and counseling services to facilitate the child's assimilation into their home. A.M. attended court proceedings throughout the case and both the caseworker and guardian ad litem observed him to share a close bond with Father.

{¶16} A.M. was three days shy of his 17th birthday at the time of the dispositional hearing. In addition to attending court proceedings, the child met with the magistrate and guardian ad litem for an in camera interview. The magistrate noted for the record that A.M. was adamant about his desire to continue counseling services and wished to engage in family counseling with Father as well. Father was receptive to participating in family counseling and transported the child to counseling appointments two counties away while looking for a provider closer to his home.

{¶17} Both the caseworker and guardian ad litem testified that A.M. was resolute in his desire to remain in Father's home where he was comfortable and had a good relationship with Father, Father's fiancée, and his teenage half-brother. The guardian ad litem opined that it was in the child's best interest to be placed in Father's legal custody. He testified that A.M. views Father as "dad" and the people in that household as "his family."

{¶18} A.M. told the caseworker and guardian ad litem that he did not want to return to Mother's home and did not wish to have any contact with her at the present time. Given the child's age and strong desire to avoid any relationship with Mother, the caseworker recommended that any future visitation between Mother and A.M. occur on the child's terms when he decides he is ready.

{¶19} Mother argues that denying the agency's motion for legal custody to allow additional time for investigation would have given the juvenile court "reasonable assurances that the basic needs of the child would be met in [F]ather's care and greater insight into any contemplated visitation between the child and the mother through the counseling component of

the Case Plan." Mother declined to put on a case-in-chief. She could have called Father on cross examination and/or the agency's kinship assessor to testify to develop these issues but she did not. The evidence as presented, however, demonstrated that the agency had investigated and found Father's home suitable. The guardian ad litem also investigated and supported legal custody to Father without reservation.

{¶20} Based on a thorough review of the record, this is not the exceptional case where the trier of fact clearly lost its way and created a manifest miscarriage of justice by awarding legal custody to Father. A.M. had an established relationship with Father, was comfortable and closely bonded with all residents in the home, and wished to live with Father. The child was adamant, on the other hand, that he did not want to have any contact with Mother at the present time. At 17 years old, A.M. was mature enough to express his desire for custody, and the guardian ad litem agreed that remaining in Father's home would meet the child's best interest. CSB's Kinship Department assessed Father's home and found it to be an appropriate environment in which A.M.'s needs would be met. Accordingly, the juvenile court's finding that an award of legal custody to Father was in the child's best interest is not against the manifest weight of the evidence. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

> THE TRIAL COURT COMMIT[T]ED REVERS[I]BLE ERROR WH[EN] IT FOUND THAT [CSB] USED REASONABLE EFFORTS TO PREVENT THE CONTINUED REMOVAL OF THE CHILD FROM THE MOTHER.

{¶21} Mother argues that CSB failed to provide her with reasonable reunification efforts. As Mother failed to challenge the agency's use of reasonable efforts in her objection, she has not preserved the issue for appeal. Accordingly, this Court declines to address it.

**{¶22}** Juv.R. 40(D)(3)(b)(iv) provides that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." The failure to raise an issue in an objection forfeits all challenges to that issue except for a claim of plain error. *In re B.C.*, 2014-Ohio-2748, at ¶ 24 (9th Dist.).

**{¶23}** In this case, Mother argued in her objection only that an award of legal custody to Father was not in A.M.'s best interest. She did not challenge CSB's use of reasonable reunification efforts. Accordingly, she has forfeited the ability to raise that issue on appeal. Moreover, as she has not argued plain error, this Court will not make an argument on her behalf. *See id.* Mother's second assignment of error is overruled.

### III.

**{¶24}** Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

STEVENSON, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

ANTHONY J. COSTELLO, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.

LEONARD JOHN BREIDING, Attoreney at Law, for Appellee.

DANIEL R. BACHE, Attorney at Law, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.