[Cite as *In re E.H.*, 2025-Ohio-3185.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: E.H.
    A.H.

C.A. Nos.    24CA012196
                     25CA012227

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.    22JC64996
                22JC64997

DECISION AND JOURNAL ENTRY

Dated: September 8, 2025

HENSAL, Judge.

{¶1} Appellant Father appeals the judgment of the Lorain County Court of Common Pleas, Juvenile Division, that placed two of his children in the legal custody of interested third parties and denied the maternal grandmother's ("Grandmother") motion for legal custody. This Court reverses and remands.

I.

{¶2} Mother and Father are the biological parents of the two children (daughters) subject to this appeal. E.H. was born March 27, 2020; and A.H. was born April 20, 2022. A son was born to the parents during the proceedings below, and certain facts regarding that child are procedurally relevant to this appeal.

{¶3} After Mother tested positive for marijuana at A.H.'s birth, Lorain County Children Services ("LCCS" or "the agency") began working informally with the parents. The agency

identified substance use issues for both parents and referred them for drug and alcohol assessments. After further monitoring the home environment and finding no significant concerns, LCCS suggested that the parents follow the recommendations from their assessments and the agency closed its case.

{¶4}    Three days later, on June 9, 2022, LCCS reengaged with the family after learning that A.H. was hospitalized with severe injuries, including a skull fracture, brain bleed, and subdural hemorrhages in both eyes.  The agency instituted a safety plan whereby Grandmother was to go to the parents' home to wait for E.H. to wake up and then take her to Grandmother's home.  LCCS did not remove E.H. from the parents' home at that time, even though the agency knew that Father would be alone with the child until Grandmother arrived a few hours later when her work shift ended.

{¶5}    Both parents and Grandmother denied having caused A.H.'s injuries or knowing how the child was injured.  Because Grandmother told the agency that she had provided care for the infant during the two weeks prior to her hospitalization, the presumed window during which the child was injured, LCCS' policy prevented the agency from considering her as a placement option or visitation supervisor under the safety plan.  Mother, Father, and Grandmother suggested family friends Cl.J. and Ch.J (collectively, "the J.s") as a placement option for E.H.  When the hospital released A.H. on June 12, the agency placed her with the J.s too.  The agency remained involved with the family in an informal manner for three and a half months, during which Mother and Father were permitted to have supervised visits with the children.

{¶6}    On September 26, 2022, however, LCCS filed complaints alleging that E.H. was a dependent and neglected child; and that A.H. was a dependent, neglected, and abused child.  In addition to A.H.'s injuries, the agency alleged that the parents had not been consistent in visiting

the children, were continuing to use marijuana and alcohol to excess and not engaging in treatment, were allegedly involved in a domestic violence incident, and adamantly maintained that they had not injured A.H. and did not know how the infant sustained serious injuries. LCCS requested an order placing the children in the temporary custody of Cl.J. under the agency's protective supervision. The motion did not mention Cl.J.'s husband Ch.J. Thereafter, Grandmother moved to intervene and for temporary custody of the children.

{¶7} The matter proceeded to adjudication before the magistrate. The decision indicated that Mother and Father were not present for the hearing, although their attorneys were. The decision also included apparent boilerplate language referencing "stipulations of the parties, and the evidence presented" but it is not clear whether the parents' attorneys stipulated to any facts or findings on their behalf. Neither parent filed objections to the magistrate's decision. The juvenile court adopted the decision, adjudicating E.H. dependent and neglected; and A.H. dependent, neglected, and abused.

{¶8} Mother, Father, and Grandmother attended the dispositional hearing at which the magistrate granted Grandmother's motion to intervene as a party. Mother and Father asserted that they were not seeking reunification with the children at that time; rather, they supported Grandmother's motion for temporary custody. Because the magistrate believed the caseworker's testimony, disputed by Grandmother, that Grandmother had allowed Father unsupervised contact with E.H. the morning she was to have picked up the child from the parents' home, the magistrate denied Grandmother's motion for temporary custody. The juvenile court placed the girls in the J.s' temporary custody under LCCS' protective supervision and adopted the agency's case plan as an order.

{¶9}     Father filed an objection, arguing that the J.s' home was not suitable for temporary custody due to its small size, a wood stove which posed a risk of burns to the children, and the J.s' use of their immature children to babysit.  Father emphasized that the guardian ad litem had not investigated Grandmother, who he argued was an appropriate temporary custodian due to her extensive education and experience in childcare and her dedication to the family.  LCCS opposed Father's objection, arguing that the evidence demonstrated that Grandmother violated the safety plan and minimized concerns regarding A.H.'s injuries, while the parents had recommended the J.s for placement and the guardian ad litem testified that their home was safe.  In overruling Father's objection, the juvenile court noted that Grandmother could not be excluded as A.H.'s abuser due to her contact with the child during the window for injury, that Grandmother had no concerns regarding the parents and may have allowed them to have "contact" with E.H. during the safety plan, and that Mother and Father identified the J.s as a possible placement for the children.

{¶10}   After a review hearing eleven months into the cases, the magistrate maintained the children in the temporary custody of Cl.J. under LCCS' protective supervision.  No party filed objections.  Thereafter, LCCS filed a motion for legal custody to Cl.J., requesting that the juvenile court terminate the agency's protective supervision.  The agency's motion did not mention Ch.J. Almost four months later, however, LCCS filed statements of understanding for legal custody executed by both Cl.J. and Ch.J.  Grandmother moved for legal custody but did not append a signed statement of understanding for legal custody.  At no other time did Grandmother file the required statement of understanding with the court despite the statutory limitation on the juvenile court's ability to award legal custody to a non-parent.  *See* R.C. 2151.353(A)(3)(a)-(d).

{¶11}  In January 2024, Mother gave birth to her son.  Immediately thereafter, Grandmother filed a complaint for custody of the infant, but LCCS removed the child, filed a

dependency complaint, and placed him in the J.s' home. The juvenile court adjudicated the infant a dependent child.

{¶12} The magistrate held a joint two-day hearing regarding the infant's initial disposition and the agency's and Grandmother's motions regarding the custody of E.H. and A.H. Although the assistant prosecutor asserted at the beginning of the hearing that LCCS was seeking legal custody of the girls to Cl.J., she later clarified that the agency was seeking legal custody to Ch.J. too. After all parties rested their cases and presented closing arguments to the court, the magistrate discussed the statements of understanding for legal custody with the J.s. Although the magistrate thoroughly questioned Ch.J. regarding his understanding of his rights and obligations as a legal custodian, the magistrate merely asked Cl.J. if she heard the questions asked of her husband and whether she still wished to be the children's legal custodian. The magistrate did not inquire of Grandmother or otherwise elicit her understanding regarding the rights and obligations of a legal custodian.

{¶13} The magistrate found that Grandmother's home was clean and appropriate, that she did not pose a danger to the children, and that Grandmother interacted appropriately with the girls. However, the magistrate denied Grandmother's motion for legal custody based on her lack of transparency regarding Mother's recent pregnancy and minimization of the parents' involvement in A.H.'s injuries. The magistrate found that it was in the best interest of E.H. and A.H. to award legal custody to Cl.J. Although she did not reference Ch.J. in her best interest finding, the magistrate granted legal custody of the children to both Cl.J. and Ch.J. The decision awarded Mother and Father two hours of supervised visitation per week, unless the parties agreed otherwise. Although the guardian ad litem reported that Grandmother should be granted regular visitation with the children, the magistrate's decision made no such provision.

**{¶14}** Father filed an objection to the magistrate's decision, arguing that the evidence neither supported awarding legal custody to the J.s nor supported denying Grandmother's motion for legal custody of the children. LCCS responded in opposition, arguing that the evidence warranted an award of legal custody to the J.s. The juvenile court held a hearing on Father's objection, during which the attorneys for all parties were permitted to make arguments to the court.

**{¶15}** The juvenile court overruled Father's objection. It found the denial of Grandmother's motion for legal custody appropriate based on the following: (1) despite her contact with the children, Grandmother had no explanation for A.H.'s injuries other than to claim Mother and Father did not cause them; (2) Grandmother could not be excluded as a possible abuser based on her access to A.H. during the week prior to the child's hospitalization; (3) Grandmother allowed Mother and Father to have contact with E.H. while A.H. was in the hospital; (4) Grandmother is "aligned with Mother and Father;" (5) neither Mother nor Grandmother testified or otherwise attempted to refute the caseworker's testimony; (6) Father admitted pleading guilty to felonious assault and child endangering arising out of A.H.'s injuries but he testified that he is in fact not guilty; (7) Mother and Grandmother minimize A.H.'s injuries and believe that Father did not cause them; and (8) there would be no protective safeguards for the children if they were placed in Grandmother's care. While the juvenile court meticulously set out its factual findings as to why denial of Grandmother's motion was appropriate, it did not address the propriety of the J.s' home or find that an award of legal custody to the J.s was in the children's best interest. Significantly, although Father challenged the magistrate's finding that legal custody to the J.s was in the children's best interest by citing the multiple concerns the magistrate found regarding that home, the juvenile court did not address those issues in its judgment. Father timely appealed the trial court's judgment, raising one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED WHEN IT AWARDED LEGAL CUSTODY OF THE TWO CHILDREN TO [CL.J. AND CH.J.] RATHER THAN [ ] GRANDMOTHER [ ] IN OPPOSIT[ION] TO THE "CLEAR AND CONVINCING" EVIDENCE STANDARD FOR LEGAL CUSTODY.

{¶16} Father argues that the juvenile court erred by awarding legal custody of E.H. and A.H. to the J.s. Because the trial court failed to make any determination regarding the best interest of the children, this Court agrees.

{¶17} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a [non-parent] is based solely on the best interest of the child." *In re K.H.*, 2016-Ohio-1330, ¶ 12 (9th Dist.). The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 2016-Ohio-7994, ¶ 18 (9th Dist.), quoting *In re N.P.*, 2004-Ohio-110, ¶ 23 (9th Dist.). In that regard, the juvenile court is guided by the best interest factors enunciated in Revised Code Section 2151.414(D) relating to permanent custody. *In re B.G.*, 2008-Ohio-5003, ¶ 9 (9th Dist.), citing *In re T.A.*, 2006-Ohio-4468, ¶ 17 (9th Dist.). Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in Section 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 2014-Ohio-2748, ¶ 16 (9th Dist.).

{¶18} In addition, the juvenile court may also look to the best interest factors in Section 3109.04(F)(1) for guidance. *In re K.A.*, 2017-Ohio-1, ¶ 17 (9th Dist.). While some factors overlap with those above, others include the child's adjustment to his or her environment; the mental and

physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio. R.C. 3109.04(F)(1).

{¶19} Contrary to Father's assertion, a party moving for legal custody needs only to establish the best interest of the children by a preponderance of the evidence, not by clear and convincing evidence. *In re M.F.*, 2016-Ohio-2685, ¶ 7 (9th Dist.). Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. *Id.*

{¶20} When considering competing motions, a trial court must hold each moving party to his or her respective burden of proof. *In re R.S.*, 2023-Ohio-2224, ¶ 46 (9th Dist.). Accordingly, in this case, both LCCS and Grandmother maintained a burden of proving by a preponderance of the evidence that legal custody to the J.s or Grandmother, respectively, was in the children's best interest.

{¶21} This Court notes:

> [T]he juvenile court was not limited to the custodial options requested by the motions before it. As the Ohio Supreme Court recently emphasized, "Juvenile courts are afforded broad discretion in fashioning a disposition following an adjudication of a child as being abused, neglected, or dependent, because the courts are charged with protecting the best interests of children." *In re R.G.M.*, 2024-Ohio-2737, ¶ 16, citing R.C. 2151.353(A). Had the preponderance of the evidence not demonstrated that any of the [proposed legal custodians] was appropriate at the time of the hearing to assume legal custody, the trial court would have been required to deny all pending [dispositional] motions. At that time, the children would have continued by operation of law in the temporary custody of [the J.s under the protective supervision of LCCS], while the parents continued to work on their case plan objectives in pursuit of reunification. The parties would have subsequently had the opportunity to file new or renewed dispositional motions.

*In re T.R.*, 2024-Ohio-3092, ¶ 29 (9th Dist.).

{¶22} In this case, the juvenile court had competing motions for legal custody before it for consideration. After the magistrate denied Grandmother's motion and granted the agency's motion, Father objected on the grounds that the evidence did not support either of those rulings. Specifically, he cited evidence that he argued demonstrated that Grandmother could provide a safe and appropriate home for the children, while the J.s could not.

{¶23} In ruling on Father's objections, the juvenile court limited its discussion to evidence it concluded justified denying Grandmother's motion for legal custody. The trial court did not discuss any evidence relating to the propriety of the J.s as legal custodians. More significantly, the judgment lacks any findings regarding the best interest of the children. Because the trial court failed to make any determination regarding the best interest of the children, the assignment of error is sustained.

### III.

{¶24} Father's sole assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

No costs are taxed.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
CONCURS.

FLAGG LANZINGER, P. J.
DISSENTING.

{¶25} I respectfully dissent, as I would dismiss the appeals for lack of a final, appealable order based on the same reasoning enunciated in my various prior dissents. *See, e.g., In re P.O.*, 2024-Ohio-4472, ¶ 32-33 (9th Dist.); *In re T.M.*, 2024-Ohio-2479, ¶ 27-32 (9th Dist.); and *In re O.V.*, 2024-Ohio-2620, ¶ 36-39 (9th Dist.).

{¶26} In its judgment entry ruling on Father's objection to the magistrate's decision, the juvenile court orders only that it "overrules said objection." The judgment does not reiterate any prior orders relevant to the children's custodial dispositions or the parents' residual rights and responsibilities. Those include the awards of legal custody, referral to the local child support enforcement agency to establish child support orders, and setting the parameters of the parents' visitation with the children. Because the judgment requires reference to multiple documents to

clarify the parties' rights and obligations, I would conclude that the judgment is not a final, appealable order. *See In re P.O.* at ¶ 33 (9th Dist.). Accordingly, I dissent from the majority's opinion.


APPEARANCES:

MARC L. STOLARSKY, Attorney at Law, for Appellant.

ANTHONY CILLO, Prosecuting Attorney, and LEIGH S. PRUGH, Assistant Prosecuting Attorney, for Appellee.

JESSICA W. JUMP, Attorney at Law, for Appellee.

JUSTIN C. MILLER, Attorney at Law, for Appellee.

MAUREEN SAVINO, Guardian ad Litem.